Robert E. MAYES, Plaintiff-Appellant,

v.

The CITY OF DALLAS,
Defendant-Appellee.

No. 84–1376.

United States Court of Appeals,
Fifth Circuit.

Nov. 30, 1984.

Julian & Daniel, Michael M. Daniel, Dallas, Tex., for plaintiff-appellant.

Kent S. Hofmeister, City Atty., Sam S. Lindsay, Asst. City Atty., Dallas, Tex., for defendant-appellee.

Before RUBIN, RANDALL and TATE, Circuit Judges.

TATE, Circuit Judge:

The plaintiff Mayes owns a home within a historic preservation district in Dallas, Texas, created by city ordinance. No alterations may be made to an exterior feature of property within the district without prior approval by city authorities. Mayes was denied permission to paint his brick home and to construct a walkway with pylons across his front lawn. Claiming deprivation of property rights in violation of the due process clause of the Fourteenth Amendment, Mayes brings this suit and challenges the application of the city historic preservation regulation to prevent his making the alterations in question, further praying for damages and for injunctive relief.

After bench trial, the district court dismissed the suit, with findings of fact not here challenged. On his appeal, the plaintiff Mayes contends solely that the city's exercise of its zoning power in the interests of historic preservation offended due process, because, as to the denial of the alterations in question, the applicable city ordinances did not provide objective, specific standards that would prevent the arbitrary exercise of this zoning power by city authorities.

We affirm, finding that under *Maher v. City of New Orleans*, 516 F.2d 1051 (5th Cir.1975), *cert. denied*, 426 U.S. 905, 96 S.Ct. 2225, 48 L.Ed.2d 830 (1976), the city ordinances at issue comport with Fourteenth Amendment due process requirements.

## I.

The 1960 Revised City Code of Dallas provides for the creation by ordinance of an "historic overlay district" in order "to preserve landmarks and areas exemplary of architectural, cultural, economic, social and historical value," if the district or landmark meets certain specified requirements. Dallas City Code, § 51–4.501(a). Thereafter, a person "shall not alter an exterior feature of a historic landmark that is governed by this section or an ordinance establishing a historic overlay district" without first complying with a certificate of appropriateness procedure. *Id.* 501(b)(1).

This procedure involves an application to a city department for a certificate authorizing the alteration; a review by its staff, a historical-overlay-district task force committee, and a city Landmark Committee; and recommendation by the latter to the City Planning Commission. The purpose of the review is to assure that the proposed alteration in the historic district meets preservation and district criteria specified in the Dallas City Code and in the ordinance that created the historic district. The district task force committees and the Landmark Committee are composed of people with some particular preservation expertise. The City Planning Commission may approve, deny, or conditionally approve the application for a certificate of appropriateness to make the proposed alteration. Any person dissatisfied with the Commission's final action may appeal within ten days to the City Council, which may decide the issue free of binding effect of the Commission's final action.

By ordinance passed February 3, 1982, the regulations for the Swiss Avenue Historic District were re-enacted. Ordinance No. 17285. The ordinance sets forth detailed preservation criteria as to existing or new construction, including spacing, landscaping, setback and height restrictions, minimum lot width and depth and coverage (*e.g.*, no more than 25% of the lot to be covered by structures), fencing, facades, color schemes, front entrances and porches, embellishment and trim, and detailing in construction.

## II.

The plaintiff Mayes acquired his home in the Swiss Avenue Historic District in 1982. He does not dispute that he was required to obtain a certificate of appropriateness before making any alteration, if the alteration was indeed within those specified by the City Code and the Swiss Avenue Ordinance.

■ A municipality has the constitutional power to regulate the use of private property in the interest of historic preservation. *Penn Central Transportation Company v. City of New York*, 438 U.S. 104, 132–34, 98 S.Ct. 2646, 2662–64, 57 L.Ed.2d 631 (1978). On their face, as Mayes concedes, the present municipal historic preservation ordinances satisfy requisite due process criteria as being of general application to well-defined geographic areas, supervised by a regulatory body of professional qualifications, with governing legislative criteria provided, and an administrative procedure adequate to assure that the regulatory powers be exercised in accord with the legislative criteria, *Maher v. City of New Orleans, supra*, 516 F.2d at 1060–1064. *See also* Annotation, validity and construction of statute or ordinance protecting historical landmarks, 18 A.L. R.4th 991 (1982).

■ On his appeal the plaintiff Mayes contends that nevertheless, with regard to the specific alterations for which he was denied approval, the Dallas ordinances did not set forth objective, articulated standards sufficient to prevent the arbitrary exercise of governmental power, without legislative direction, by the committees and agencies entrusted with approving certifi-

cates of appropriateness. Mayes' complaint of the lack of objective standards relates (a) to the denial of a certificate to permit him to paint his brick home and (b) to the refusal to approve his construction of a brick walkway across his front lawn with upstanding brick pylons.

As to (a), the application of Mayes to paint his brick house was denied because the natural color and textures of the brick were "a strong, positive, aesthetic attribute of the house, and should be maintained," and because there were no other houses on the block with painted brick.[1] As to (b), approval of the brick walkway and pylons was denied because Mayes had constructed it without prior application for a certificate of appropriateness, and because neither the color of the bricks nor the protruding pylons were "appropriate" within the guidelines established by the ordinance creating the Swiss Avenue Historic District.

In rejecting Mayes' attack upon the historic preservation regulation, the district court found that the city ordinances in question "provide adequate legislative direction to the Commission to enable it to perform its functions consonant with due process." We agree.

The regulations themselves, it is true, do not specifically prohibit the painting of old-brick residences, nor the construction of pylons protruding above the lawn surfaces. Nevertheless, other provisions of the guidelines do provide articulated standards adequate to provide "structure and guidelines," *Maher, supra,* 516 F.2d at 1063, to the administrative body charged with enforcing them, as well to prevent unreviewable "unfettered authority," *id.,* to be exercised by that agency with regard to the rulings now questioned by Mayes.

The Swiss Avenue Historic District ordinance, *supra cit.,* provides, in § 5.1, that

the color of a building "must harmonize with the structure's facade as well as complement the overall character of the District." § 5.2 provides, "All building facade material shall be architecturally and historically appropriate." Under § 2.2(2), "the finish texture [of all walkways] shall be compatible with ... walkways of surrounding structures." The introduction to § 2.2, which provides detailed regulation as to landscaping, notes as a governing principle, "[t]he open expanse of front yards and the quantities of planting within them serves as a transitional area between public and private space permitting easy viewing of the architectural detail and can serve to unify and beautify the streetscape." Finally, § 6.1 requires that "[t]he manner in which materials are used ... and the fashion in which elements such as columns ... are utilized shall be compatible and harmonize with the existing structures in the block."

These legislative principles provide adequate articulation and guidelines that justify the city commission's rulings with regard to the three matters complained of:

> To satisfy due process, guidelines to aid a commission charged with implementing a public zoning purpose need not be so rigidly drawn as to prejudge the outcome in each case, precluding reasonable administrative discretion.

*Maher, supra,* 516 F.2d at 1062. As in *Maher,* the ordinance is precise where possible—such as in delineating the district, and in defining the nature of the alterations that require approval, including the principles and often specific criteria by which alterations are to be determined as appropriate or not—, while the *regulatory* process is accomplished through personnel with proper professional qualifications, and

---

**1.** The Swiss Avenue Historic District was initially created in 1973. Since then, the city agency has never granted a certificate of appropriateness to allow the painting of any natural brick within the district.

Some painted brick houses do, however, exist in the Swiss Avenue Historic District, including one in the next block from Mayes'. With one exception, however, these houses were painted prior to the district's creation, and they are allowed to be repainted as a part of routine maintenance. The one exception is a house that was painted without a certificate of appropriateness. The owner was fined but was not required to remove the paint because removal might have damaged the brick.

an elaborate decisionmaking and appeal process provides for ultimate review by the City Council. 516 F.2d at 1062–63.[2]

In substance, with many specific exemplars, the Swiss Avenue regulations require that alterations be historically and architecturally appropriate in accordance with the existing character of the district, and that they harmonize with the structure to be altered and with the district itself. With regard to the three rulings here questioned by the plaintiff Mayes, the record shows not only, as previously noted, that they were in accord with guideline principles specified in the historic preservation ordinance, but also that these principles were consistently so applied by the regulatory body.

*Conclusion*

■ The plaintiff Mayes has thus not shown either (a) that the regulations themselves did not provide reviewable articulated standards that justified these rulings, or (b) that the standards were arbitrarily applied against him. We therefore AFFIRM the district court judgment dismissing his suit.

AFFIRMED.

---

**2.** The legislation in *Maher* provided as legislative standard only that the city commission was directed to preserve buildings with "architectural and historical value." 516 F.2d at 1060. However, despite this generality, the *Maher* court found that the evident purpose of the legislation and "other fertile sources," such as old city plans and historic documents, were "readily available to promote a reasoned exercise of the professional and scholarly judgment

of the Commission." 516 F.2d at 1063. The plaintiff Mayes points out that these historical sources are, in the present case, lacking to provide guidance to the city commission's exercise of its regulatory preservation function. In the present case, however, the much more detailed regulations provided by the Swiss Avenue Historic District ordinance (described in part I and in the preceding paragraph of the text, *supra*) adequately serve a similar function.