NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0307n.06

No. 21-3755

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ANDREW H. STEVENS; MELANIE COPENHAVER, | ) ) ) | **FILED**<br>Jul 27, 2022<br>DEBORAH S. HUNT, Clerk |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | |
| CITY OF COLUMBUS, OHIO; TIMOTHY J. NOLL, in his official capacity as Code Enforcement Officer of the City of Columbus, Ohio, | ) ) ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| Defendants-Appellees. | ) ) ) | OPINION |

Before: McKEAGUE, STRANCH, and BUSH, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** In 2018, Andrew Stevens and Melanie Copenhaver completed a major landscaping project in the front yard of their home in Columbus's Bryden Road Historic District. After receiving notice that their failure to apply for and secure a certificate of appropriateness for the landscaping from the City's Historic Resources Commission violated the Historic Planning and Preservation Code, they were unsuccessful in obtaining retroactive approval or a favorable outcome in their appeals. Stevens and Copenhaver then sued the City and Timothy J. Noll, a Columbus Code Enforcement Officer, in federal court, challenging the Code as unconstitutionally vague, an impermissible delegation of legislative power, contrary to equal protection under the Ohio Constitution, and imposing excessive fines. The district court denied their claims, and Stevens and Copenhaver appealed. We **AFFIRM**.

## I.   BACKGROUND

Stevens and Copenhaver purchased their home at 1734 Bryden Road in 2017. The house is nestled in the Bryden Road Historic District, a single street stretching over 1.5 miles with approximately 254 structures along it. Like many homes in the area, the house sits atop a hill that slopes down to the sidewalk in front. When Stevens and Copenhaver first purchased the property, the front yard had patchy grass, stairs cutting up the middle of the yard from the sidewalk to the house, and no retaining walls.

As a property in a historic district, 1734 Bryden Road is subject to the requirements of the Columbus Historic Planning and Preservation Code. Stevens and Copenhaver, therefore, had to apply for permission—known in the Preservation Code as a "certificate of appropriateness"—to make most renovations and improvements to their property. In renovating his home, Stevens applied for and received several such certificates before beginning projects. Neither Stevens nor Copenhaver, however, took that step when changing the landscaping of 1734 Bryden Road in May 2018. Stevens installed several retaining walls, laid dark mulch, and added new plants to the front yard of the property. He later asserted that he believed, based on the City's architectural guidelines, that his landscaping choices fit with the aesthetics of the neighborhood as a whole. The decision not to seek a certificate of appropriateness until after landscaping began the administrative and judicial saga leading to this appeal.

### A.    The Columbus Historic Planning and Preservation Code

Before delving into Stevens and Copenhaver's quest to challenge the Preservation Code's application to landscaping, it is helpful to understand exactly what the Preservation Code does. The Historic Planning and Preservation Code has four stated goals:

> [T]o preserve and promote the public health, safety and welfare by means of regulations and restrictions enacted to encourage the orderly growth and development of the city; to provide for adequate light, air, open space and convenience of access; to protect against fire and natural hazards; and to maintain and enhance the value of buildings, structures and land throughout the city.

Columbus City Code § 3101.01. Those who own property in historic areas, therefore, must take additional steps when constructing, renovating, or making other changes to that property. Excepting situations involving issues of public safety, "no person shall construct, reconstruct, alter, change the exterior color of or demolish any listed property or architectural feature . . . or make site improvements" to a property in a historic district without first applying for and receiving a certificate of appropriateness for the proposed change. *Id.* § 3116.04.

The Preservation Code offers further guidance on what qualifies as construction, alterations, changes, and site improvements subject to the certificate of appropriateness requirement. An "alteration" is defined as "any material or visual change, other than normal maintenance and repair to the exterior of any structure." *Id.* § 3116.011. A "substantial alteration," in turn, is "an alteration that has a major impact on the architectural features, characteristics or integrity of a structure or listed property" such as changes to "windows, window frames, railings, porches, balconies, ornamentations, fencing and site improvements such as regrading and filling." *Id.* An "architectural feature" includes "[t]he exterior of a property as is designed to be exposed to public view." *Id.* Finally, a "site improvement" is "a significant exterior improvement other than a building or structure including but not limited to, landscaping; parking, utility or service area; walkway; fence; mound; wall; sign; mechanical system or similar improvement." *Id.* § 3116.018.

A property owner seeking a certificate of appropriateness must file their application with the Historic Resources Commission. *Id.* § 3116.06. Specific materials are required so that the

Commission can review the proposed change: photographic documentation; samples of materials and the color of finishes; a rendering or written description of the work to be performed; and for substantial alterations, construction drawings including landscaping plans and detail drawings. *Id.* § 3116.07. The Preservation Code indicates that the process of receiving a certificate of appropriateness is often iterative and collaborative. *See id.* § 3116.10. Applicants are allowed to meet with historic preservation officers to discuss the proposed project before the Commission reviews the application. *Id.* § 3116.06. Even if the Commission denies an application, applicants proposing a "substantial alteration, construction or demolition" can seek mediation to create an appropriate alternative plan. *Id.* § 3116.10.

In reviewing a submitted application, the Commission must consult the applicant's required materials, the architectural standards defined in the Preservation Code, and "pertinent typical architectural characteristics and such guidelines" as adopted by the Commission. *Id.* § 3116.09(B). Section 3116.13, for example, explains that "site improvements," including landscaping, "should be compatible to each other and to the subject building or structure as well as to adjacent contributing properties, open spaces and the overall environment." *Id.* § 3116.13. The architectural guidelines in § 3116.11 for alterations of architectural features are more extensive, providing in relevant part that "[t]he distinguishing characteristics of the property shall not be destroyed" and that "the commission shall consider . . . the historical and architectural characteristics typical of structures in the district, the architectural value and significance . . . of the architectural feature involved and its relation to the architectural features of other contributing properties in the immediate neighborhood." *Id.* § 3116.11(2), (12). The Commission must issue a certificate if the application complies with the Preservation Code's standards and guidelines. *Id.* § 3116.09(B).

B.      The Current Litigation

The landscaping project at 1734 Bryden Road did not go through that typical process, however, because Stevens and Copenhaver neither sought nor obtained a certificate of appropriateness before changing their front yard.  On June 25, 2018, Columbus Code Enforcement Officer Tim Noll issued a Columbus City Code Violation Notice after seeing the landscaping changes.  The Notice stated that the property owners had erected a brick retaining wall without first obtaining a certificate of appropriateness, in violation of Columbus City Code § 3116.04, and gave Stevens 30 days to correct the violation or face a third-degree misdemeanor that could result in a $500 fine and 60-days' imprisonment.

Stevens appeared before the Historic Resources Commission on July 19, 2018, to discuss the Notice and apply for a certificate of appropriateness to maintain the modifications to his front yard.  The Commissioners voiced concern that the landscaping was "not in character with the neighborhood or the house" as it was "too suburban."  Specifically, the Commissioners explained that the altered front lawn was not in keeping with "what Bryden Road was about originally, with the continuous view down the street, and park-like setting with a continuous green lawn."  At that first hearing, the Commission tabled their decision so that they could work with Stevens on his application.

Stevens again appeared before the Historic Resources Commission on December 20, 2018.  The Commission issued a denial of his application for a certificate of appropriateness that day and sent him a letter on December 27 memorializing that denial.  The Commission explained that Stevens' landscaping did not meet the requirement of Columbus City Code § 3116.13(A) that proposed alterations to landscaping be compatible with similar improvements, the structure, adjacent properties, and the overall environment.  The Commission also explained that it had

denied the certificate of appropriateness because the proposal was not compliant with § 3116.11(2), which requires that "[t]he distinguishing characteristics of the property shall not be destroyed" and that "removal or alteration of any historical material or distinctive architectural feature shall be avoided whenever possible."

Stevens appealed to the Board of Commission Appeals, which determined that it lacked jurisdiction to provide de novo review and could not judge the lawfulness of the Columbus City Code. The Board denied his appeal. He next appealed to the Environmental Division of the Franklin County Municipal Court, which similarly dismissed the case for lack of jurisdiction.

Stevens and Copenhaver sued the City of Columbus and Timothy Noll in the U.S. District Court for the Southern District of Ohio, seeking declaratory judgment and injunctive relief. They brought three counts. First, they alleged a violation of their due process rights under the Fourteenth Amendment of the U.S. Constitution pursuant to 42 U.S.C. § 1983 and their due process rights under Article I of the Ohio Constitution. This claim encompassed void-for-vagueness and delegation challenges. Second, Stevens and Copenhaver alleged that the defendants violated their right to equal treatment with respect to private property under Article I of the Ohio Constitution. Finally, they alleged that the civil fines permitted under the City Code violate the Excessive Fines Clause of the Eighth Amendment to the U.S. Constitution.

The district court denied Stevens and Copenhaver's motion for a preliminary injunction and declaratory relief, which was consolidated with a trial on the merits of that claim. The parties then filed cross-motions for summary judgment on the remaining Eighth Amendment claim. The district court granted summary judgment to the City, reasoning that the Eighth Amendment claims were not ripe because the City had yet to impose fines and, even if ripe, the likely $100 per day

fines would not be excessive. The district court entered final judgment for the defendants, and this appeal followed.

## II. DISCUSSION

This appeal involves purely legal issues that we review de novo. *See 600 Marshall Ent. Concepts, LLC v. City of Memphis*, 705 F.3d 576, 583 (6th Cir. 2013); *Cutter v. Wilkinson*, 423 F.3d 579, 584 (6th Cir. 2005).

### A. The Due Process Challenge

Stevens and Copenhaver challenge the Historic Preservation Code, both facially and as applied, pursuant to the Due Process Clause of the Fourteenth Amendment to the federal Constitution. A successful claim for violation of procedural due process requires plaintiffs to show (1) "a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment"; (2) that the state "deprived [them] of this protected interest within the meaning of the Due Process Clause"; and (3) that the state failed to "afford them adequate procedural rights prior to depriving them of their protected interest." *Med Corp., Inc. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002) (quoting *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999)). The parties do not dispute that Stevens and Copenhaver have a protected property interest. At issue, therefore, is whether the City deprived them of that interest and whether it did so without adequate procedural rights. Stevens and Copenhaver primarily raise two challenges. First, they argue that the Preservation Code's requirement of a certificate of appropriateness for landscaping controls use of their property through unconstitutionally vague standards that put them at risk of fines and possible imprisonment. The second argument is that the Preservation Code's delegation of authority on landscaping decisions violates their procedural due process rights by impermissibly delegating authority to private citizens without sufficient constraints. We take each challenge in turn.

1. The Void for Vagueness Challenge

Under the U.S. Constitution, the void-for-vagueness doctrine operates to provide "the person of ordinary intelligence a reasonable opportunity to know what is prohibited" and offer clear standards to judges, juries, and police that prevent discriminatory or arbitrary enforcement. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). A law is vague under the first of those aims if "men of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926); *see Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 551 (6th Cir. 2007). As to the second goal, "laws must provide explicit standards for those who apply them," *Grayned*, 408 U.S. at 108, and "[a] vague law impermissibly delegates basic policy matters to [officials] for resolution on an ad hoc and subjective basis," *id.* at 108–09. Nonetheless, "we can never expect mathematical certainty from our language," *id.* at 110, and must be mindful that "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity," *United States v. Williams*, 553 U.S. 285, 304 (2008) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989)). Stevens and Copenhaver bear the burden of proving vagueness, and review begins with the presumption that the Preservation Code is constitutional. *See United States v. Kernell*, 667 F.3d 746, 750 (6th Cir. 2012).

Stevens and Copenhaver argue that the Preservation Code fails to offer the necessary notice of what landscaping is prohibited and permitted. The requirement that landscaping changes in a historic district must be "compatible to each other and to the subject building or structure as well as to adjacent contributing properties, open spaces and the overall environment," Columbus City Code § 3116.13(A), is, on their read, void for vagueness because the term "compatible" provides too little guidance for a practical meaning. Specifically, they assert that Columbus City Code

§§ 3116.04, 3116.09, 3116.13, and 3116.11(2), which present what the Historic Resources Commission must consider in evaluating an application for a certificate of appropriateness, offer essentially standardless delegations in violation of the Due Process Clause.

This vagueness claim is best understood as a challenge to two parts of the Preservation Code. The "compatibility" standard comes into play only *after* an application for a certificate of appropriateness is under Commission review. *See id.* § 3116.04. The City cited Stevens and Copenhaver for a failure to apply for and receive such a certificate before implementing their significant landscaping work. The first question, therefore, is whether the Preservation Code provides sufficient notice of when a property owner in an historic district must apply for a certificate. The second question is whether, once such an application is under review, the standards in the Preservation Code are sufficiently definite to allow for both notice and fair application of the compatibility requirement.

A starting point for our analysis is the applicable degree of scrutiny. "[T]he degree of vagueness that the Constitution tolerates . . . depends in part on the nature of the enactment." *Ass'n of Cleveland Firefighters*, 502 F.3d at 551 (second alteration in original) (quoting *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 498 (1982)). Civil laws not implicating the First Amendment are reviewed less stringently than criminal laws "because the consequences of imprecision are qualitatively less severe." *Vill. of Hoffman Ests.*, 455 U.S. at 499. Courts also typically consider only as-applied challenges to civil laws. *Belle Maer Harbor v. Charter Twp. of Harrison*, 170 F.3d 553, 557 (6th Cir. 1999). A facial analysis, however, is permissible "where the enactment imposes criminal sanctions." *Id.* A law that imposes criminal sanctions or covers "a substantial amount of constitutionally protected conduct" requires a high level of definiteness to withstand a facial due process challenge, *id.* (quoting *Vill. of Hoffman Ests.*, 455 U.S. at 494),

but, if the law does not fit that description, then a facial challenge will succeed "only if the enactment is impermissibly vague in all of its applications," *Vill. of Hoffman Ests.*, 455 U.S. at 495.

Applying the principles underlying our standard of review to the void for vagueness challenge here, we conclude that a heightened level of scrutiny applies to the challenged portions of the Preservation Code. Although there is no argument that the Code inhibits the expression of First Amendment rights, the law does put violators at risk of criminal penalties. An individual who fails to comply with any of the Preservation Code's provisions—including the requirement to apply for a certificate of appropriateness—is guilty of a first-degree misdemeanor, which carries a penalty of up to $1,000 per day and 180 days in jail. Columbus City Code §§ 2301.25, 3101.99. Given these criminal sanctions, we conduct a facial examination of the Preservation Code's requirement to apply for a certificate and determine whether it is insufficiently definite to comport with the Due Process Clause. *See Springfield Armory, Inc. v. City of Columbus*, 29 F.3d 250, 254 (6th Cir. 1994).

An ordinance is not unconstitutionally vague on its face if "it is clear what the ordinance as a whole prohibits," *Hill v. Colorado*, 530 U.S. 703, 733 (2000) (quoting *Grayned*, 408 U.S. at 110), or if the ordinance "is surely valid 'in the vast majority of its intended applications,'" *id.* (quoting *United States v. Raines*, 362 U.S. 17, 23 (1960)). A federal court must consider not only the challenged language, but also those phrases and words in the context of the law in its entirety. Turning to whether the requirement to apply is sufficiently clear, we note that the Preservation Code identifies with specificity changes to a property within a Historic Preservation District that require an application for a certificate of appropriateness. For instance, § 3116.011(4) lists types of alterations that fall under the Historic Resources Commission's jurisdiction and specifies the

inclusion of "changes in or additions to" features such as "windows, window frames, railings, porches, balconies, ornamentations, fencing and site improvements such as regrading and filling." Columbus City Code § 3116.011(4). The standards in § 3116.04 are far from vague: an enforcing officer or judge knows that the failure to apply for a certificate of appropriateness before implementing significant landscaping or other changes to the exterior of a building in a Historic Preservation District violates the section. *See id.* §§ 3116.04, 3116.011, 3116.018. There is little risk that the requirement that "no person shall construct, reconstruct, alter, change the exterior color of or demolish any . . . architectural feature . . . in a district or make site improvements thereon without" applying for and receiving a certificate of appropriateness (or some clearance due to hardship) would be difficult to enforce consistently. *See id.* § 3116.04. The Commission receives applications for certificates, and those applications can be compared against new changes to exterior features to buildings to determine if a property owner has failed to file a proper application. These sections offer examples of changes that require an application for a certificate of appropriateness and identify minor changes that do not. *See id.*, §§ 3116.05, 3116.011. The Preservation Code's requirement that homeowners apply for a certificate of appropriateness to make landscaping changes in Historic Preservation Districts, such as the modifications Stevens and Copenhaver made, is not unconstitutionally vague under the Due Process Clause.

Even if we were to examine this notice challenge as applied, it would still fail. The Preservation Code requires applications for certificates of appropriateness to the Commission when a property owner in a historic district proposes changes to "[t]he exterior of a property as is designed to be exposed to public view" (an "architectural feature") and any "significant exterior improvement" such as "landscaping; . . .walkway; fence; mound; wall; . . . mechanical system or similar improvement" (a "site improvement"). *Id.* §§ 3116.011, 3116.018. Stevens and

Copenhaver installed brick retaining walls and changed the landscaping through numerous plantings and substitution of dark mulch for all grass in the front yard. These changes were both alterations to the property's "architectural features" because the retaining walls and landscaping were exterior elements "designed to be exposed to public view" and "site improvements" as they were significant exterior changes to landscaping and front walls. *See id.* §§ 3116.011, 3116.018.

The second void for vagueness challenge—to the Code's standards for determining whether to issue a certificate of appropriateness—requires review of multiple sections of the Preservation Code. As a preliminary matter, our standard of review for these sections differs from that of the requirement to apply for a certificate because the sections guiding evaluation of an application do not themselves contain a penal component. The failure to submit a "compatible" or "appropriate" landscaping plan results only in a denial of a certificate granting the applicant the right to make the proposed modifications. *See* Columbus City Code §§ 3116.09, 3116.10; *see Belle Maer Harbor*, 170 F.3d at 557–58 (applying a more stringent review where the challenged standards of an ordinance directly related to enforcement decisions). Review of these sections is less searching than for those laws directly tied to potential criminal sanctions. Under this standard, a vagueness claim succeeds only if the complainant shows that "the enactment is impermissibly vague in all of its applications." *Vill. of Hoffman Ests.*, 455 U.S. at 495.

Stevens and Copenhaver assert that the Preservation Code's requirement of "compatibility" for proposed landscaping is unconstitutionally vague because the term is undefined and lacks objective standards for its application. Their specific quibble is with the requirement in § 3116.13 that "site improvements," including landscaping, "should be compatible to each other and to the subject building or structure as well as to adjacent contributing properties, open spaces and the

overall environment." Columbus City Code § 3116.13.[1] They point out that "compatible" is undefined in the Columbus City Code, which "invites subjectivity and speculation." The compatibility standard, they assert, is also not tied to particular historical evidence and applies regardless of whether the landscaping is itself "historic." Furthermore, the interpretation of this standard is delegated to a Commission composed of unelected, private individuals.

Stevens and Copenhaver are correct that "compatible" is undefined in the Preservation Code. But the fact that a term is not explicitly defined in a law will not automatically render the law void for vagueness. *Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Sup. Ct.*, 894 F.3d 235, 247 (6th Cir. 2018). "[W]here the challenged language is 'commonly used in both legal and common parlance,' it often will be 'sufficiently clear so that a reasonable person can understand its meaning.'" *Id.* (quoting *Deja Vu of Cincinnati, L.L.C. v. Union Twp. Bd. of Trs.*, 411 F.3d 777, 798 (6th Cir. 2005) (en banc)). Looking at § 3116.13 in isolation, the language does offer a sufficient standard for application and review. Common dictionary definitions state that "compatible" means "capable of existing together without discord or disharmony" and "consistent [or] congruous" with some other thing. Compatible, Merriam-Webster Unabridged Dictionary, https://unabridged.merriam-webster.com/unabridged/compatible (last visited July 13, 2022); Compatible, Oxford English Dictionary, https://www.oed.com/view/Entry/37499 (last visited July 13, 2022). Put simply, the requirement is that the aesthetics of any proposed change complement the existing aesthetics of the historisc district. Indeed, the Preservation Code applies to all the city's historical districts, not just the one where Stevens and Copenhaver live. A proposed change that is "compatible" in one historical district may not be "compatible" if it were proposed in a

---

[1] The Commission also cited and discussed § 3116.11, which provides the standards for consideration of a proposed alteration of an architectural feature, when denying Stevens' application for a certificate of appropriateness. Because Stevens and Copenhaver challenge only § 3116.13, we leave discussion of § 3116.11 to the side.

different historical district, but that does not mean the "compatible" standard is unconstitutionally vague. Rather, it means that the general standard gains specificity as applied to a particular home in a particular historical district. Once a property owner submits a proposed change, as Stevens and Copenhaver did here, Section 3116.13 provides explicit objective comparators for the Commission's analysis: the property owner's home, homes in the immediate vicinity, the historic character of the area, and the homes in the historic district at large. Columbus City Code § 3116.13. While these standards do not invite mathematical precision, they do cabin the Commission's discretion in evaluating applications. *See Grayned*, 408 U.S. at 110.

A comparison to *Belle Maer Harbor*, illustrates how § 3116.13 satisfies constitutional standards. 170 F.3d at 553. In *Belle Maer Harbor*, we reviewed an ordinance limiting the permissible radius of open water created by "bubbling" devices used to protect docks and boats during the winter. *Id.* at 555. A violation of this civil law did far more than just prevent the installation of such a device; violators faced fines and incarceration. *Id.* The ordinance limited the open water area to no more than a five-foot radius from the protected dock or a "reasonable" radius determined by the inspecting officer. *Id.* The law neither provided points of comparison for reasonableness nor defined the term "reasonable." *Id.* In determining that the law was unconstitutionally vague, we explained that there is not "a commonly accepted meaning . . . for the term 'reasonable' which would provide an inspection officer with guidance in interpreting the Ordinance and in executing his or her enforcement duties with any uniformity." *Id.* at 558. In contrast, the Preservation Code provides clear points of comparison for determining compatibility, which both limits the Commission's discretion and offers guidance to property owners developing applications.

This cabining of Commission discretion is further apparent when viewing the Preservation Code in its entirety. Our court considers void-for-vagueness claims through holistic analysis of the challenged law. *See Platt*, 894 F.3d at 252. The central question, then, is whether the Preservation Code as a whole "provide[s] explicit standards guiding [its] enforcement[.]" *United Food & Com. Workers Union, Loc. 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 359 (6th Cir. 1998) (citation omitted). In addition to the compatibility standard and appropriate comparators offered in § 3116.13, the Preservation Code includes instructions on what the Commission must consider when conducting that analysis. Commissioners are to review a number of submissions from homeowners:

> (1) Photographic documentation in the form of color prints of the property including, but not necessarily limited to the following images of the property: setting and location characteristics; each facade or vertical surface affected by the construction, alteration or demolition; and architectural features or appurtenances impacted by the proposal.
>
> (2) Samples of materials and colors of finishes, product literature or descriptions of materials and finishes to be used, when relevant.
>
> (3) Drawings or rendering of any graphic or sign to be installed on the property and its proposed location.

Columbus City Code § 3116.07(B). Applications for a certificate of appropriateness for a substantial alteration also require "a complete set of construction drawings including site plan, facades and other exterior surfaces, landscaping plan and detail drawings." *Id.* § 3116.07(C). These instructions on materials the Commission will review in combination with the list of considerations in § 3116.13 place the Preservation Code far from the one-word standard in *Belle Maer Harbor*.

This conclusion comports with our decisions on similar vagueness challenges to non-criminal laws. We have found, for example, that "a statute prohibiting persons from

discharging substances into state waters that are or may 'become injurious to the public health, safety, or welfare,' was 'sufficiently specific to provide a fair warning that certain kinds of conduct are prohibited.'" *Johnson v. Morales*, 946 F.3d 911, 929 (6th Cir. 2020) (quoting *United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1441 (6th Cir. 1991)). That the statute did not explicitly define "injurious" was not conclusive. *Akzo Coatings of Am., Inc.*, 949 F.2d at 1441. The fact that the interpretation of a key term in a law—such as "injurious"—may change over time or be context-dependent does not render the law vague. *See id.*

We also find persuasive the conclusions of our sister circuits in similar vagueness challenges. In *Mayes v. City of Dallas*, the Fifth Circuit rejected a vagueness challenge to a historic preservation regulation as applied to proposed exterior modifications of the plaintiff's home. 747 F.2d 323 (5th Cir. 1984). The regulation instructed that building color "must harmonize with the structure's facade as well as complement the overall character of the District"; "[a]ll building facade material shall be architecturally and historically appropriate"; that landscaping should allow "easy viewing of the architectural detail and can serve to unify and beautify the streetscape"; and that "[t]he manner in which materials are used . . . shall be compatible and harmonize with the existing structures in the block." *Id.* at 325 (second alteration in the original). The Fifth Circuit found that these were "articulated standards adequate to provide 'structure and guidelines' to the administrative body charged with enforcing them, as well [as] to prevent unreviewable 'unfettered authority.'" *Id.* (citations omitted) (quoting *Maher v. City of New Orleans*, 516 F.2d 1051, 1063 (5th Cir. 1975)). Similarly, in *Cornerstone Bible Church v. City of Hastings*, the Eighth Circuit rejected a vagueness challenge to a zoning law based on its conclusion that the numerous examples of permitted uses and categories in the law provided sufficient guidance. 948 F.2d 464, 473–74

(8th Cir. 1991). Here, the iterative review process and the language in § 3116.13 defining appropriate comparators offer similarly adequate guidance under federal constitutional standards.

The evidence Stevens and Copenhaver offer to show that the Preservation Code's landscaping provisions are unconstitutionally vague as applied to their property do not change this analysis. The photographs of their home support the inference that a reasonable commissioner told to consider the compatibility of the landscaping could conclude that it is distinct from that of the property's direct neighbors and that the multiple retaining walls are not visually or structurally similar to existing retaining walls in the neighborhood. The Preservation Code's guidance to the Commission to consider the aesthetic harmony of buildings in the neighborhood provides points of comparison both for the decisionmakers and potential applicants. Stevens and Copenhaver bear the burden of showing unconstitutional vagueness. Their argument that the presence of retaining walls in the yards of approximately 40 other properties in a historic area of over 250 buildings shows the arbitrariness of the Preservation Code's application does not meet that burden. Stevens and Copenhaver have offered no evidence concerning which of the properties had landscaping grandfathered in by virtue of having retaining walls before Bryden Road became a Historic Preservation District, nor clear evidence that their property is substantially similar to those that did receive certificates of appropriateness. Thus, Stevens and Copenhaver have not met their burden of proving that the landscaping provisions of the Preservation Code are unconstitutionally vague, either facially or as applied.

2. The Impermissible Delegation Challenge

Stevens and Copenhaver also argue that the Preservation Code's regulation of landscaping is unconstitutional under the Due Process Clause because it impermissibly delegates authority over certificates of appropriateness to the Commission. It is true that the Fourteenth Amendment

prohibits certain delegations of legislative power to private persons without sufficient standards to guide their discretion. *See Eubank v. City of Richmond*, 226 U.S. 137, 143–44 (1912); *City of Eastlake v. Forest City Enters., Inc.*, 426 U.S. 668, 676–78 (1976). Although the leading Supreme Court cases on this doctrine are primarily from the last century, this "private nondelegation doctrine remains vital[.]" *Kiser v. Kamdar*, 831 F.3d 784, 791 (6th Cir. 2016); *see also Rice v. Vill. of Johnstown*, 30 F.4th 584, 588–91 (6th Cir. 2022).

The concerns animating the private delegation doctrine, however, simply are not present here. The Commission is a seven-member body appointed by Columbus's elected mayor that evaluates applications for certificates of appropriateness. *See* Columbus City Code §§ 3117.02; 3117.04(I). While Stevens and Copenhaver characterize the Commission as "untrained nearby property owners," the City Code shows that some degree of familiarity with architectural issues is a prerequisite to appointment. The Columbus Mayor appoints members, and the Preservation Code "recommends that appointments to the historic resources commission" include at least two architects and a representative of the Columbus Landmarks Foundation. *Id.* The Code further states that "membership may include, but shall not be limited to, architects, contractors, carpenters, engineers, archaeologists, architectural or public historians, developers, business owners, lawyers or bankers." *Id.*

Contrast this case with *Eubank*, in which a local law allowed two-thirds of property owners on a street to request setback lines for adjacent property owners. *Eubank*, 226 U.S. at 141. The law was an impermissible delegation because it offered no standard for the property owners' exercise of their power, leaving them able to modify property lines "solely for their own interest, or even capriciously." *Id.* at 144; *see also Washington ex rel. Seattle Title Tr. Co. v. Roberge*, 278 U.S. 116, 122 (1928). The property owners were not an elected or appointed body but were instead

any property owner abutting a street. *Eubank*, 226 U.S. at 141. This allowed "[o]ne set of owners [to] determine[] not only the extent of use, but the kind of use which another set of owners may make of their property." *Id.* at 143. The Preservation Code, in contrast, requires the political appointment of Commissioners and provides instructions on what materials and factors they must consider when issuing certificates. *See* Columbus City Code §§ 3116.07, 3116.08, 3116.11, 3116.13, 3117.02. Evidence of the Commission's potential self-interest is also lacking, a key concern under *Eubank*. *See Rice*, 30 F.4th at 590–91. Furthermore, as Stevens and Copenhaver admit, the void for vagueness analysis overlaps with our assessment of the delegation challenge. Given that the Preservation Code provides adequate guidance on assessing applications for certificates of appropriateness, and the appointment process provides a degree of political control, the delegation challenge fails.

### B. The Due Process Challenges Under the Ohio Constitution

Stevens and Copenhaver also challenge the Preservation Code's landscaping provisions under the Ohio Constitution. In keeping with Ohio's presumption in favor of the validity of local ordinances, "legislation may be general in nature, and discretion may be given to an administrative body to make subordinate rules, as well as to ascertain the facts to which the legislative policy applies." *Vill. of Hudson v. Albrecht, Inc.*, 458 N.E.2d 852, 855, 857 (Ohio 1984). The Ohio Supreme Court has adopted a test under the Ohio Constitution that is similar to that for the federal Constitution. *See State v. Collier*, 581 N.E.2d 552, 554 (Ohio 1991). In considering whether the law provides fair notice and precludes arbitrary or unguided enforcement, Ohio courts must "ensure that fundamental constitutionally protected freedoms are not unreasonably impinged or inhibited." *Id.* (quoting *State v. Tanner*, 472 N.E.2d 689, 691 (Ohio 1984)).

As discussed above, Stevens and Copenhaver have not shown that the Preservation Code violates either the notice or guidance requirements of the vagueness doctrine. As to constitutionally protected freedoms, the Ohio Constitution characterizes private property rights as "inviolate," but only insofar as they are "subservient to the public welfare." Ohio Const. art. 1, § 19. Given the Ohio court's extensive case law stating that land regulation ordinances have a presumption of constitutionality, *see, e.g.*, *Goldberg Cos., Inc. v. Richmond Heights City Council*, 690 N.E.2d 510, 512 (Ohio 1998); *Cent. Motors Corp. v. Pepper Pike*, 653 N.E.2d 639, 642 (Ohio 1995), Stevens and Copenhaver face an uphill climb to show that the Preservation Code unconstitutionally burdens their property rights. Indeed, they "must prove unconstitutionality beyond fair debate." *Goldberg Cos., Inc.*, 690 N.E.2d at 512. They cannot meet that standard because Ohio courts have previously concluded that similar laws do not unreasonably encroach on property rights. *See Albrecht*, 458 N.E.2d at 854. Even if the Preservation Code's impact on landscaping is viewed as driven solely by aesthetic interests rather than historic preservation, Ohio cases "have implied that there is a governmental interest in maintaining the aesthetics of a community" such that zoning for aesthetic reasons is a valid exercise of police power. *Id.* at 856.

As to delegation, Ohio law allows for delegation of legislative power when the statute provides for some degree of political accountability and guiding standards for those using the delegated authority. *See City of Rocky River v. State Emp. Rels. Bd.*, 539 N.E.2d 103, 112 (Ohio 1989). As discussed above, the law provides the Commission with intelligible standards, and the mayoral appointment design offers a measure of political accountability. Thus, Stevens and Copenhaver's due process challenges under the Ohio Constitution fail.

**C.** **The Arbitrary and Unequal Treatment Under the Ohio Constitution Challenge**

Stevens and Copenhaver assert that the district court erred in rejecting their claim under Article I of the Ohio Constitution that the Preservation Code subjects them to arbitrary and unequal treatment. They essentially argue that the Preservation Code either (1) is impermissibly arbitrary in violation of their due process rights because it does not advance historic preservation—the purported governmental interest—either facially or as applied, or (2) violates equal protection rights under the Ohio Constitution as it is not predicated on a governmental interest in historic preservation because it applies to constrain only property owners in Historic Preservation Districts. Stevens and Copenhaver contend that because property is a fundamental right under the Ohio Constitution, a higher degree of scrutiny is required of the different treatment of homeowners living in historic districts versus those that do not.

Though the Ohio Constitution provides strong protections to private property rights, it is also explicit that those rights are "subservient to the public welfare." Ohio Const. art. I, § 19. Given the presumed validity of zoning ordinances under Ohio law, *see Shemo v. Mayfield Heights*, 722 N.E.2d 1018, 1022 (Ohio 2000), it is plaintiffs' burden to prove that an ordinance restricting their use of private property is "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare," *Goldberg Cos., Inc.*, 690 N.E.2d at 512 (quoting *Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395 (1926)). Plaintiffs must show this lack of a substantial relation "beyond fair debate." *Jaylin Invs., Inc. v. Moreland Hills*, 839 N.E.2d 903, 907 (Ohio 2006) (quoting *Goldberg Cos., Inc.*, 690 N.E.2d at 515). Furthermore, Ohio law requires the court to scrutinize "legislative action" rather than "the property owner's proposed use." *Id.* Thus, our analysis must focus on the "legislative judgment underlying the enactment, as it is applied to the particular property." *Id.* at 908.

The Preservation Code lays out its goals and those of the Commission. Its general purpose in limiting alterations and modifications to personal property in historic areas is, among other objectives, "to preserve and promote the public health, safety and welfare" through "restrictions enacted to encourage the orderly growth and development of the city" and "to maintain and enhance the value of buildings, structures and land throughout the city." Columbus City Code § 3101.01. The Commission's goals are to:

> [I]dentify structures, groups, districts and sites of historic and architectural significance and to provide a method of regulation through design review to:
>
> (A) Promote the importance of historic preservation throughout the city;
>
> (B) Identify and list the diverse historic resources of the city;
>
> (C) Preserve, stabilize and improve neighborhoods, business districts and property for the enjoyment of all the people of the city;
>
> (D) Foster civic pride in the beauty and accomplishments of the past;
>
> (E) Strengthen the city's economy through the creation of new jobs;
>
> (F) Protect the unique historical and architectural character of listed properties; and
>
> (G) Increase the city's tax base through reinvestment in older buildings.

*Id.* § 3117.005. Stevens and Copenhaver assert that there is a substantial mismatch between these stated goals and the requirements on property owners. The guidelines in §§ 3116.11 and 3116.13 predominantly focus on aesthetic compatibility between structures and neighboring properties rather than historical accuracy. Without a connection between the two, they argue, the Preservation Code's burden on homeowners wishing to landscape yards in historic preservation areas violates the Ohio Constitution.

Stevens and Copenhaver have the burden of showing that the relevant provisions of the Preservation Code lack a substantial relationship to the City's interest in the general welfare. Ohio

precedent, however, establishes that strategies like the ones used in the Preservation Code are sufficiently tied to historic preservation goals such that they promote an interest in the public welfare. The Ohio Supreme Court in *Village of Hudson v. Albrecht, Inc.*, concluded that a village's historic preservation ordinance focused on aesthetics did not violate the Ohio Constitution because the local government had a legitimate "interest in maintaining the aesthetics of the community." 458 N.E.2d at 856. The standards of that law were much the same as the ones here. An Architectural and Historic Board of Review was required to consider "accepted and recognized architectural principles" and "the development of adjacent, contiguous and neighboring buildings and properties for the purpose of achieving safe, harmonious and integrated development of related properties." *Id.* at 854. Provisions focusing on the harmony of properties with the current look of the neighborhood provide a helpful proxy for Columbus's interest in preserving and stabilizing historic neighborhoods. *See* Columbus City Code § 3117.0005(C) Thus, under Ohio law, Stevens and Copenhaver have not met the burden of showing "beyond fair debate" that the Preservation Code lacks a substantial relation to the promotion of the public welfare.

### D. The Excessive Fines Challenge

Ripeness presents a stumbling block to Stevens and Copenhaver's Eighth Amendment challenge under the Excessive Fines Clause. "Ripeness is related to standing, and shares a foundation in Article III's case-and-controversy requirement." *Miller v. City of Wickliffe*, 852 F.3d 497, 503 (6th Cir. 2017). The doctrine prevents courts from prematurely ruling on abstract issues. *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977). A case is typically ripe if a plaintiff shows that she has suffered an injury-in-fact because the threat of enforcement is "sufficiently imminent." *Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Sup. Ct.*, 769 F.3d 447, 451 (6th Cir. 2014) (citing

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014)). We must consider whether the claim is "fit for judicial resolution" and if withholding such a decision would harm the parties. *Abbott Labs.*, 387 U.S. at 153; *see also Hill v. Snyder*, 878 F.3d 193, 213 (6th Cir. 2017). We evaluate three factors to determine a claim's ripeness: (1) the likelihood of the alleged harm; (2) the sufficiency of the factual record "to produce a fair adjudication of the merits of the parties' respective claims"; and (3) the resulting "hardship to the parties if judicial relief is denied at this stage in the proceedings." *Grace Cmty. Church v. Lenox Twp.*, 544 F.3d 609, 615 (6th Cir. 2008) (quoting *Insomnia, Inc. v. City of Memphis*, 278 F. App'x 609, 612 (6th Cir. 2008)).

Stevens and Copenhaver's Excessive Fines challenge is not ripe for the simple reason that the City has yet to impose or seek any fine against them under the Preservation Code. This fact impacts all three ripeness factors. When the district court first considered the claim, "there [was] no evidence that any action ha[d] been taken to pursue collection from Plaintiffs." We are in a similar position today. As cases outside this circuit have concluded, review of this Eighth Amendment challenge is best done after the imposition of a punishment or fine. *See, e.g.*, *Duffner v. City of St. Peters*, 930 F.3d 973, 977 (8th Cir. 2019); *Cheffer v. Reno*, 55 F.3d 1517, 1523–24 (11th Cir. 1995). Because the current nuisance abatement lawsuit against Stevens and Copenhaver in the Ohio Environmental Court seeks, according to the City's attestation, only injunctive relief to get the party in compliance and "does not seek payment of any fines," it does not change this ripeness analysis. If the City chooses to seek fines for failure to remove the alterations to the landscaping, *see* Columbus City Code §§ 3116.26, Stevens and Copenhaver would have a ripe challenge. But because such a factual scenario was not before the district court, nor is before us now, the Eighth Amendment challenge is not ripe.

## III.  CONCLUSION

Accordingly, we **AFFIRM** the district court's decisions to deny Stevens and Copenhaver's claims and enter final judgment in favor of the City of Columbus and Noll.